UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

|  |  |  |
|---|---|---|
| ANDREA RUDD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 5:22-cv-00201-GFVT |
| | ) | |
| v. | ) | |
| | ) | **OPINION** |
| UNITED STATES OF AMERICA | ) | **&** |
| *et al.*, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendant United States of America's Motion for Partial Dismissal. [R. 10.] While she was a prisoner in Federal Medical Center Lexington, Plaintiff Andrea Rudd alleges that a corrections officer, Defendant Jacob Salcido, raped her. [R. 1 at 12–13.] Ms. Rudd sued Mr. Salcido for violations of the United States Constitution and the Government for four torts under the Federal Torts Claims Act. *Id.* at 16–18. Invoking its sovereign immunity, the United States now moves to dismiss three of the tort claims. [R. 10 at 2.] To defeat this motion, Ms. Rudd must show that Mr. Salcido acted within the scope of his employment when he attacked her. Because she has not shown that Mr. Salcido committed the sexual assault to further the interests of the Bureau of Prisons, the United States is entitled to sovereign immunity against the intentional tort claims, and the Government's Motion **[R. 10]** will be granted.

**I**

During part of an eight-year term of incarceration, Ms. Rudd resided in Federal Medical Center Lexington. [R. 1 at 1–2.] The Bureau of Prisons employed Mr. Salcido as a correctional

officer at FMC Lexington.  *Id.* at 2.  Ms. Rudd alleges that BOP management investigated Mr. Salcido "on numerous occasions for sex crimes against female inmates."  *Id.* at 9.

Despite this background, Ms. Rudd maintains that the BOP permitted Mr. Salcido to interact with her in unsupervised settings.  *Id.*  After the BOP transferred Ms. Rudd to a COVID treatment unit, Mr. Salcido, who served as the unit's supervisor, struck up a friendly relationship with Ms. Rudd.  *Id.* at 11–12.  Ms. Rudd later took a job as an orderly in the unit.  *Id.* at 12.

Around this time, Ms. Rudd alleges that Mr. Salcido began making unwanted sexual comments.  *Id.*  She claims that his behavior escalated as he began to "grab, touch[,] and press his body against Ms. Rudd when he cornered her alone."  *Id.*  Mr. Salcido purportedly threatened to prevent Ms. Rudd from receiving necessary medication if she resisted or reported him.  *Id.*

In September of 2020, Ms. Rudd recalls Mr. Salcido summoning her to a prison hair salon.  *Id.*  There, Mr. Salcido allegedly forced Ms. Rudd to fellate him and then engaged in sexual intercourse without her consent.  *Id.*  Ms. Rudd claims that the sexual contact "dislodged a mesh lining that had been placed in her uterus from an earlier medical procedure," which required surgery.  *Id.* at 12–13.  On a subsequent occasion, Mr. Salcido allegedly trapped Ms. Rudd in an officer's station and kissed her as she attempted to escape.  *Id.*  As a result, Ms. Rudd claims to suffer from post-traumatic stress disorder, depression, and physical pain.  *Id.*

In 2022, Ms. Rudd sued the United States of America and Mr. Salcido.  She brings claims for negligence, assault and battery,[1] false imprisonment, and intentional infliction of emotional distress against the United States pursuant to the Federal Torts Claims Act.  *Id.* at 14–18.

---

[1] Count two of the Complaint pleads the torts of assault and battery.  [R. 1 at 16.]  For simplicity, this Opinion refers to Count two as battery only.

**II**

The United States moves to dismiss all the claims against it except for the negligence allegation. [R. 10.] It invokes its sovereign immunity as to the battery and false imprisonment claims and seeks dismissal for lack of subject matter jurisdiction under Rule 12(b)(1). *Id.* at 3. Then, it argues that Ms. Rudd cannot maintain her intentional infliction of emotional distress argument, implicating dismissal under Rule 12(b)(6). *Id.* at 13. The matter is now ripe for review.

**A**

As a preliminary matter, the Court must determine the applicable standard by which to review the Government's motion. Under Rule 12(b)(1), a party can bring either a facial attack or a factual attack against a district court's subject matter jurisdiction. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A facial attack merely questions the sufficiency of the pleadings set forth in the complaint to support jurisdiction. *Id.* On the other hand, a factual attack raises a factual controversy that challenges the predicate basis for jurisdiction. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).

Resolution of this issue will greatly impact the analysis moving forward. When reviewing a facial attack, a district court assumes the allegations in the complaint are true and construes them in the light most favorable to the nonmoving party. *Id.* Conversely, to assess a factual challenge, the court does not presume the plaintiff's factual allegations are true. *Gentek Bldg. Prods.*, 491 F.3d at 330. Instead, "the court can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction." *Global Tech., Inc. v. Yubei (Xinxiang) Power Steering Sys. Co.*, 805 F.3d 806, 810 (6th Cir. 2015). To do so, the district court has broad "discretion to consider affidavits and the documents outside the complaint, and

may even conduct a limited evidentiary hearing if necessary." *In re Steinle*, 835 F. Supp. 2d 437, 441 (N.D. Ohio 2011) (quoting *Ohio Hosp. Ass'n v. Shalala*, 978 F. Supp. 735, 739 (N.D. Ohio 1997)).

Here, the parties agree that the United States brings a facial attack.  [R. 10 at 4; R. 11 at 2.]  But the parties' characterization does not control.  *See Gentek Bldg. Prods.*, 491 F.3d at 330 ("Though the parties do not explicitly say so, what is really at issue here is a jurisdictional challenge to the allegations in the complaint.").  The United States's confusion on the nature of its motion is understandable.  This district's opinions on the subject diverge.  *Compare Greene v. United States*, No. 6:22-cv-00120, 2023 U.S. Dist. LEXIS 8478, at *7 (E.D. Ky. Jan. 18, 2023) (accepting the Government's characterization of its motion to dismiss an FTCA rape case as a facial attack), *with B.A. v. United States*, No. 5:21-cv-00106, 2021 WL 4768248, at *1 (E.D. Ky. Oct. 12, 2021) (stating as a rule, in an FTCA rape case, that assertions of sovereign immunity necessarily constitute "a factual attack on the Court's subject matter jurisdiction.").

Despite the parties' conclusion otherwise, the United States's motion is a factual attack on the existence of subject matter jurisdiction.  To articulate why, a preview of the substantive law at issue is necessary.  As will be more fully articulated below, the motion to dismiss turns on whether, during the sexual assault, Mr. Salcido acted within the scope of his employment as defined by Kentucky law.  *See*, *infra*, Section II.B.  The Commonwealth determines the scope of one's employment solely based on the employee's subjective motivation for acting.  *Patterson v. Blair*, 172 S.W.3d 361, 369 (Ky. 2005); *accord Does 1–10 v. Haaland*, 973 F.3d 591, 599 (6th Cir. 2020).  Even if the employee mistakenly believed that his activity would be in the interest of his employer, his subjective belief still requires a finding that he acted within the scope of his employment.  *See Papa John's Int'l, Inc. v. McCoy*, 244 S.W.3d 44, 55 (Ky. 2008) (quoting W.

Page Keeton, et al., *Prosser and Keeton on the Law of Torts* 505 (5th ed. 1984)) ("the master is held liable for any intentional tort committed by the servant where its purpose, however misguided, is wholly or in part to further the master's business.").

Therefore, to determine whether its subject matter jurisdiction is properly invoked, the Court will have to make a factual finding regarding Mr. Salcido's intent. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (concluding that a motion to dismiss that turned on the scope of employment inquiry under the FTCA was a factual attack); *see also Gentek Bldg. Prods.*, 491 F.3d at 332 (citing the Eleventh Circuit's reasoning in *Lawrence* with approval while establishing the law that governs factual attacks in this Circuit). To do so, the Court must weigh Ms. Rudd's allegations regarding Mr. Salcido's intent. *Global Tech.*, 805 F.3d at 810. To understand why, consider the opposite approach.

If the United States were correct and it brought a facial attack, its motion would be self-defeating. If the Court conducted a facial inquiry, it would be obligated to assume that the allegations in Ms. Rudd's complaint are true. *Gentek Bldg. Prods.*, 491 F.3d at 330. Ms. Rudd alleges that a conspiracy exists among the management of the United States Prisons to permit guards to assault and sexually abuse inmates as a means of controlling prisoner behavior. [*See* R. 1 at 5–9.] Were that to be true, Mr. Salcido might have believed he was furthering his employer's interests and could have acted within the scope of his employment. For obvious reasons, the Court doubts that the Government intended to fall on its own sword in this manner.

Instead, the better course is to follow the logic articulated by the Eleventh Circuit in *Lawrence*. The scope of employment is relevant in two ways. To recover against an employer for the intentional tort of an employee, under Kentucky law or the FTCA, a plaintiff must prove that the employee acted within the scope of his employment. *Patterson*, 172 S.W.3d at 369;

*Lawrence*, 919 F.2d at 1528.  Likewise, the scope of employment inquiry is a predicate for

jurisdiction.  *Millbrook v. United States*, 569 U.S. 50, 54 (2013).  "Because the extent of the

United States' waiver of immunity from suit is defined, in cases such as this, by reference to

state tort law, proof of scope of employment serves two purposes: it is a necessary predicate to

the court's subject matter jurisdiction and it is an element the plaintiff must establish to win the

case, just as if the defendant were a private party."  *Lawrence*, 919 F.2d at 1528.

The intertwined nature of the scope of employment as a predicate jurisdictional fact and a

substantive element of the intentional tort claims dictates the standard of review moving forward.

"If . . . an attack on subject-matter jurisdiction also implicates an element of the cause of action,

then the district court should '*find that jurisdiction exists* and deal with the objection as a direct

attack on the merits of the plaintiff's claim.'"  *Gentek Bldg. Prods.*, 491 F.3d at 330. (quoting

*Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997)).  In most cases, the

district court employs a procedure that is more familiar to a motion to dismiss for failure to state

a claim, under Rule 12(b)(6), or for summary judgment, under Rule 56.  *Id.*  However, the reality

that "a decision on subject-matter jurisdiction also implicates the substantive merits of the claim"

does not bind the district court's hands.  *See id.* at 332.  If the claim is "clearly immaterial, made

solely for the purpose of obtaining jurisdiction or [is] wholly unsubstantiated and frivolous," the

district court retains discretion to simply dismiss the claim.  *Id.*

## B

The Court lacks subject matter jurisdiction over Ms. Rudd's claims for battery and false

imprisonment.  The United States federal government has sovereign immunity and "can only be

sued to the extent it has waived its immunity."  *United States v. Orleans*, 425 U.S. 807, 814

(1976).  The Federal Torts Claims Act waives the Government's immunity for tort claims

involving "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the [United States] while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1); *Mynatt v. United States*, 45 F.4th 889, 894–95 (6th Cir. 2022). The Act contains several exceptions to this broad waiver. *Mynatt*, 45 F.4th at 895. Because the FTCA confers jurisdiction on the United States district courts, subject matter jurisdiction does not exist over claims falling within these exceptions. *Id.*

One such exception covers a subset of enumerated intentional torts, specifically "assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). That said, for six of these torts, there is an exception to the exception. *See Millbrook*, 569 U.S. at 54. The Government waives its sovereign immunity for claims of assault, battery, false imprisonment, false arrest, abuse of process, and malicious prosecution "related to the 'acts or omissions' of an 'investigative or law enforcement officer.'" *Id.* at 55 (citing 28 U.S.C. § 2680(h)). For a district court to have jurisdiction over one of these six claims, the officer's acts or omissions must also "fall 'within the scope of his office or employment.'" *Id.* (citing 28 U.S.C. §§ 2680(h), 1346(b)(1)).

Here, the United States admits that Mr. Salcido qualifies as an investigative or law enforcement officer. [R. 10 at 8.] Accordingly, the battery and false imprisonment claims can move forward if Mr. Salcido's acts fell within the scope of his employment with the Bureau of Prisons. *See Millbrook*, 569 U.S. at 55. The Government relies on several decisions that hold sexual assault does not fall within the scope of a prison guard's employment. [*See* R. 10 at 10–12.]

For purposes of the FTCA, the scope of employment is defined by state law.  28 U.S.C. § 1346(b)(1).  Under Kentucky law, "the master is held liable for any intentional tort committed by the servant where its purpose, however misguided, is wholly or in part to further the master's business." *Papa John's*, 244 S.W.3d at 55 (quoting Keeton, *supra*, at 505); *accord Scottsdale Ins. Co. v. Sandler*, 381 F. App'x 554, 556 (6th Cir. 2010).  If the employee "acts from purely personal motives . . . which [are] in no way connected with the employer's interests, he is considered in the ordinary case to have departed from his employment, and the master is not liable." *Papa John's*, 244 S.W.3d at 55 (quoting Keeton, *supra*, at 506).  This approach focuses on the motivation behind an action to determine whether an employee acts within the scope of his employment. *Patterson*, 172 S.W.3d at 369; *accord Does 1–10*, 973 F.3d at 599.  The foreseeability of the activity from the employer's perspective is irrelevant.[2] *Patterson*, 172 S.W.3d at 369.

Kentucky's cases illustrate the nuances of this approach.  After a car cut off a bus in traffic, a bus driver acted outside of the scope of his employment when he stopped the bus and assaulted a man on the side of the road to vindicate his "conceptions of personal wrong . . . ." *See id.* at 367–68 (discussing *Wood v. Southeastern Greyhound Lines*, 194 S.W.2d 81 (1946)).  The fight did not further the employer's interests. *Id.* at 368  "The bus driver's attack and his

---

[2] Both parties use a four-factor test to assess whether Mr. Salcido's acts fell within the scope of his employment.  [R. 10 at 8; R. 11 at 6.]  The test considers "(1) whether the conduct was similar to that which the employee was hired to perform; (2) whether the action occurred substantially within the authorized spatial and temporal limits of the employment; (3) whether the action was in furtherance of the employer's business; and (4) whether the conduct, though unauthorized, was expectable in view of the employee's duties." *Coleman v. United States*, 91 F.3d 820, 824 (6th Cir. 1996).  This test is no longer compatible with Kentucky law after the Commonwealth's court of last resort specifically rejected foreseeability as an element of the scope of employment. *See Patterson*, 172 S.W.3d at 369 ("Kentucky law has rejected Judge Friendly's approach, which focuses exclusively on foreseeability and refuses to consider motive."); *see also Scottsdale Ins.*, 381 F. App'x at 556 (rejecting the four-factor test and interpreting *Patterson* as "explicitly abrogating Kentucky precedent that focused on foreseeability in favor of a test examining only employee motive[.]").

usual bus driving employment bore no more similarity to each other than a plug horse bears to 'Man O' War' . . . ." *Id.* (quoting *Wood*, 194 S.W.2d at 83).

On the other hand, a store clerk who shot and killed a man who he believed was robbing the store acted within the scope of his employment. *Frederick v. Collins*, 378 S.W.2d 617, 620 (Ky. 1964). It did not matter that the owner of the store forbade his employees from resisting a robbery. *Id.* at 618. "[L]iability was proper even though the employer had forbidden such an action." *Patterson*, 172 S.W.3d at 370 (discussing *Frederick*). These cases make clear that an intentional tort only falls within the scope of employment, under Kentucky law, if the employee subjectively believed he was acting in his employer's interest rather than in his own. *See id.* (the cases make clear that the focus is "on the servant's purpose for the intentional act that was perpetrated.").

As the party invoking jurisdiction under the FTCA, Ms. Rudd bears the burden of demonstrating that Mr. Salcido acted within the scope of his employment with the Bureau of Prisons when he raped her. *See Carlyle v. United States, Dep't of Army*, 674 F.2d 554, 556 (6th Cir. 1982); *see also In re Steinle*, 835 F. Supp. 2d at 441 ("When assessing a factual attack on subject matter jurisdiction, the plaintiff bears the burden of demonstrating the court has jurisdiction."). Ms. Rudd argues that "Salcido used sexual coercion and abuse to further the goals of the BOP, namely, to control and subdue inmates and force compliance with their forced employment duties . . . ." [R. 11 at 6.] She alleges that "[t]he use of assault and battery as a tool to control and force compliance out of inmates by correctional officers is widespread and exceedingly common . . . ." *Id.* Because the United States's invocation of sovereign immunity is a factual attack on subject matter jurisdiction, the Court need not accept these allegations as true. *See Gentek Bldg. Prods.*, 491 F.3d at 330.

Against this, the United States makes several irrelevant arguments.  For example, it claims "[w]hatever [Mr. Salcido's] motive for the behavior claimed in the complaint, it in no way benefitted the BOP."  [R. 10 at 10.]  The issue is not whether the rape ultimately benefitted the BOP, but rather whether Mr. Salcido perceived himself as acting in the BOP's interest.  *See Does 1–10*, 973 F.3d at 599 ("Kentucky law focuses on an employee's motive to determine whether she was acting within the scope of her employment when committing  intentional torts . . . .");  *Patterson*, 172 S.W.3d at 366 ("the master is held liable for any intentional tort committed by the servant where its purpose, *however misguided*, is wholly or in part to further the master's business." (quoting Keeton, *supra*, at 505) (emphasis added)).

The Government also argues that it could not have foreseen Mr. Salcido's "behavior . . . in view of his duties."  [R. 10 at 10.]  It focuses on statutes, like the Prison Rape Elimination Act, and BOP internal policies that forbid guards from raping prisoners.  *Id.* 9–10.  But, under Kentucky law, the employer's decision to forbid an activity does not decide the issue if the employee nevertheless believes that he is acting in his employer's interest.  *See Frederick*, 378 S.W.2d at 618.  And the foreseeability of Mr. Salcido's behavior is entirely irrelevant.  *Patterson*, 172 S.W.3d at 369.  These policies offer some insight into Mr. Salcido's subjective intent, but they are not dispositive.  *Compare B.A.*, 2021 WL 4768248, at *4 (existence of BOP policies supported an inference that a guard did not act in the BOP's interest by raping an inmate), *with Frederick*, 378 S.W.2d at 618 (policy against resisting shoplifters did not prevent liability from attaching to storeowner when employee shot a robber).

Despite the problems with the Government's arguments, it is the inadequacy of Ms. Rudd's allegations that matter.  She bears the burden of establishing jurisdiction.  *Carlyle*, 674 F.2d at 556.  To do so, she offers an unadorned, conclusory statement that "Salcido used sexual

coercion and abuse to further the goals of the BOP, namely, to control and subdue inmates and force compliance with their forced employment duties . . . ." [R. 11 at 6.] She offers no facts to support her belief that such practices are "widespread." *See id.* She also fails to offer evidence to support her claims about Mr. Salcido's subjective intent. *See id.*

Absent some evidence to the contrary, "there is no conceivable way that intentionally committing sexual assault can be motivated by a desire to serve the employer." *B.A.*, 2021 WL 4768248, at *3. The more natural conclusion is that Mr. Salcido was motivated "by a desire to serve [his] own sexual proclivities." *Am. Gen. Life & Acc. Ins. Co. v. Hall*, 74 S.W.3d 688, 692 (Ky. 2002). The overwhelming weight of authority is consistent with this conclusion. *See Flechsig v. United States*, 991 F.2d 300, 302–03 (6th Cir. 1993); *Greene*, 2023 U.S. Dist. LEXIS 8478, at *7 (Bertelsman, J.); *B.A.*, 2021 WL 4768248, *3 (Reeves, J.) (specifically rejecting an identical theory that rape was a tool to control inmates). Ms. Rudd's unsupported allegations to the contrary appear to be "wholly unsubstantiated" and "made solely for the purpose of obtaining jurisdiction." *Gentek Bldg. Prods.*, 491 F.3d at 332. Accordingly, Mr. Salcido did not act within the scope of his employment when he raped Ms. Rudd, there is no need to further develop the facts, and the Court lacks subject matter jurisdiction over the battery and false imprisonment claims because of the United States's sovereign immunity.

## C

Ms. Rudd's claim for intentional infliction of emotional distress must also be dismissed for lack of jurisdiction. The United States seeks dismissal of this claim under Rule 12(b)(6). [R. 10 at 13.] Ms. Rudd did not address this argument. [*See* R. 11.] Neither will the Court. For the same reasons outlined above, the Court cannot exercise jurisdiction over Ms. Rudd's IIED claim. When jurisdiction over a claim is at issue, courts should consider the jurisdictional flaw before

11

addressing a Rule 12(b)(6) argument to "prevent[] a court without jurisdiction from prematurely dismissing a case with prejudice." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

As discussed, the FTCA effects a broad waiver of sovereign immunity subject to several exceptions. *Mynatt*, 45 F.4th at 895. One of these exceptions sustains sovereign immunity as to a list of intentional torts. 28 U.S.C. § 2680(h). IIED is not one of the enumerated intentional torts. *See Truman v. United States*, 26 F.3d 592, 595 (5th Cir. 1994). The United States, therefore, waives sovereign immunity as to some IIED claims. *See id.* (discussing a distinction between IIED claims that arise from conduct that constitutes an intentional tort enumerated in Section 2680(h) and those that do not so arise).

That said, IIED claims, like any other FTCA claim, "must have occurred while the employee was acting within the scope of his office or employment" to fall within the Government's waiver of its sovereign immunity. *Stout v. United States*, 721 F. App'x 462, 472 (6th Cir. 2018). As with the battery and false imprisonment claims, Ms. Rudd bases her IIED claim on her allegations that Mr. Salcido engaged in "unwanted, non-consensual sexual abuse and harassment . . . ." [R. 1 at 17.] Because "there is no conceivable way that intentionally committing sexual assault can be motivated by a desire to serve the employer," Mr. Salcido's actions that underly the IIED claim were not within the scope of his employment. *B.A.*, 2021 WL 4768248, at *3. For that reason, the United States is entitled to assert sovereign immunity against count four of the complaint, which must be dismissed. *Stout*, 721 F. App'x at 473.

### III

The allegations in Ms. Rudd's complaint are, to say the least, disturbing. But this Court has no jurisdiction to adjudicate claims against the United States unless it has waived its sovereign immunity. *United States v. Orleans*, 425 U.S. 807, 814 (1976). Because there is no

reasonable basis to suggest that Mr. Salcido raped Ms. Rudd to benefit the Bureau of Prisons, the Government retains its sovereign immunity as to these claims. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. The United States's Motion to Dismiss **[R. 10]** is **GRANTED**; and

2. Counts Two, Three, and Four of the Complaint are **DISMISSED** without prejudice.

This the 2nd day of August 2023.

Gregory F. Van Tatenhove
United States District Judge